## LOS ANGELES & S. L. R. CO. v. UNITED STATES et al.

(District Court, S. D. California, S. D. March 16, 1925.)

No. 44.

1. Commerce ⬅87—District court has jurisdiction of suit to set aside final valuation of railroad property by Interstate Commerce Commission.

Under Commerce Court Act June 18, 1910, c. 309, § 1, and Act Oct. 22, 1913 (Comp. St. §§ 992, 994), abolishing that court and transferring its jurisdiction to the District Courts, a District Court has jurisdiction of a suit to set aside the final valuation of the property of a railroad company by the Interstate Commerce Commission pursuant to Interstate Commerce Act, § 19a, as amended (Comp. St. Ann. Supp. 1923, § 8591).

2. Commerce ⬅87—In suit to set aside valuation of railroad property by the Interstate Commerce Commission, new evidence certified to the Commission.

New evidence introduced in a suit to set aside the final valuation of railroad property by the Interstate Commerce Commission, certified to the Commission under Interstate Commerce Act, § 19a, as amended (Comp. St. Ann. Supp. 1923, § 8591).

In· Equity. Suit by the Los Angeles & Salt Lake Railroad Company against the United States with the Interstate Commerce Commission and the Western· Union Telegraph Company as intervening defendants. Evidence certified to Interstate Commerce Commission.

James M. Beck and Blackburn Esterline, both of Washington, D. C., and J. Edwin Simpson, of Los Angeles, Cal., for the United States.

H. A. Scandrett, of Omaha, Neb., Fred E. Pettit, Jr., and A: S. Halsted, both of Los Angeles, Cal., and J. M. Souby, of· Omaha, Neb., for Los Angeles & S. L. R. Co.

Walker D. Hines and Francis R. Stark, both of New York City, and Ralph H. Kimball, of Washington, D. C., for Western Union Telegraph Co.

Before ROSS, Circuit Judge, and BLEDSOE and McCORMICK, District Judges.

ROSS, Circuit Judge. Existing circumstances do not admit of the preparation of a

full opinion in this case, although it has received the careful consideration its importance demands. We will merely briefly indicate the views which are the basis of the conclusion to which we have come.

The Act of Congress of June 29, 1906 (34 Stat. 584 [Comp. St. § 8563 et seq.]), entitled "An act to amend an act entitled 'An act to regulate commerce,' approved February fourth, eighteen hundred and eighty-seven, and all acts amendatory thereof, and to enlarge the powers of the Interstate Commerce Commission," in its sixteenth section provided, among other things, as follows:

"The venue of suits brought in any of the Circuit Courts of the United States against the Commission to enjoin, set aside, annul, or suspend any order or requirement of the Commission shall be in the district where the carrier against whom such order or requirement may have been made has its principal operating office, and may be brought at any time after such order is promulgated. And if the order or requirement has been made against two or more carriers then in the district where any one of said carriers has its principal operating office, and if the carrier has its principal operating office in the District of Columbia then the venue shall be in the district where said carrier has its principal office; and jurisdiction to hear and determine such suits is hereby vested in such courts. * * *"

The act of June 18, 1910 (36 Stat. 539), entitled "An act to create a Commerce Court, and to amend the act entitled 'An act to regulate commerce,' approved February fourth, eighteen hundred and eighty-seven, as heretofore amended, and for other purposes," created a court of the United States, to be known as the Commerce Court, and to have the jurisdiction then possessed by Circuit Courts of the United States and the judges thereof over all cases of certain described kinds, including "cases brought to enjoin, set aside, annul, or suspend in whole or in part any order of the Interstate Commerce Commission."

October 22, 1913 (38 Stat. 208, 219, 220 [Comp. St. §§ 992, 994, 995, 998]), Congress provided, among other things as follows:

"The Commerce Court, created and established by the act entitled 'An act to create a Commerce Court, and to amend the act entitled "An act to regulate commerce," approved February fourth, eighteen hundred and eighty-seven, as heretofore amended, and for other purposes,' approved June

4 F.(2d)—47

eighteenth, nineteen hundred and ten, is abolished from and after December thirty-first, nineteen hundred and thirteen, and the jurisdiction vested in said Commerce Court by said act is transferred to and vested in the several District Courts of the United States, and all acts or parts of acts in so far as they relate to the establishment of the Commerce Court are repealed. * * *

"The venue of any suit hereafter brought to enforce, suspend, or act aside, in whole or in part, any order of the Interstate Commerce Commission shall be in the judicial district wherein is the residence of the party or any of the parties upon whose petition the order was made, except that where the order does not relate to transportation or is not made upon the petition of any party the venue shall be in the district where the matter complained of in the petition before the Commission arises, and except that where the order does not relate either to transportation or to a matter so complained of before the Commission the matter covered by the order shall be deemed to arise in the district where one of the petitioners in court has either its principal office or its principal operating office. In case such transportation relates to a through shipment the term 'destination' shall be construed as meaning final destination of such shipment.

"The procedure in the District Courts in respect to cases of which jurisdiction is conferred upon them by this act shall be the same as that heretofore prevailing in the Commerce Court. The orders, writs, and processes of the District Courts may in these cases run, be served, and be returnable anywhere in the United States; and the right of appeal from the District Courts in such cases shall be the same as the right of appeal heretofore prevailing under existing law from the Commerce Court. No interlocutory injunction suspending or restraining the enforcement, operation, or execution of, or setting aside, in whole or in part, any order made or entered by the Interstate Commerce Commission shall be issued or granted by any District Court of the United States, or by any judge thereof, or by any Circuit Judge acting as District Judge, unless the application for the same shall be presented to a Circuit or District Judge, and shall be heard and determined by three judges, of whom at least one shall be a Circuit Judge, and unless a majority of said three judges shall concur in granting such application. When such application as aforesaid is presented to a judge, he shall immediately call

to his assistance to hear and determine the application two other judges. * * *"

The present petition was brought in this District Court, consisting at the time of one Circuit Judge and two District Judges, before whom testimony and other evidence was introduced, which was not heard or considered by the Interstate Commerce Commission, and therefore could not have formed any part of the basis of its order here complained of.

March 1, 1913 (37 Stat. 701 [Comp. St. § 8591]), Congress passed an act entitled "An act to amend an act entitled 'An act to regulate commerce,' approved February fourth, eighteen hundred and eighty-seven, and all acts amendatory thereof," by providing for a valuation of the several classes of property of carriers subject thereto and securing information concerning their stocks, bonds, and other securities, the enacting clause of which added to the act of 1887, as amended, "a new section to be known as section nineteen a, and to read as follows:

"Sec. 19a. That the Commission shall, as hereinafter provided, investigate, ascertain, and report the value of all the property owned or used by every common carrier subject to the provisions of this act. To enable the Commission to make such investigation and report, it is authorized to employ such experts and other assistants as may be necessary. The Commission may appoint examiners who shall have power to administer oaths, examine witnesses, and take testimony. The Commission shall make an inventory which shall list the property of every common carrier subject to the provisions of this act in detail, and show the value thereof as hereinafter provided, and shall classify the physical property, as nearly as practicable, in conformity with the classification of expenditures for road and equipment, as prescribed by the Interstate Commerce Commission.

"First. In such investigation said Commission shall ascertain and report in detail as to each piece of property owned or used by said common carrier for its purposes as a common carrier, the original cost to date, the cost of reproduction new, the cost of reproduction less depreciation, and an analysis of the methods by which these several costs are obtained, and the reason for their differences, if any. The Commission shall in like manner ascertain and report separately other values, and elements of value, if any, of the property of such common carrier, and an analysis of the methods of valuation employed, and of the reasons for any

differences between any such value, and each of the foregoing cost values.

"Second. Such investigation and report shall state in detail and separately from improvements the original cost of all lands, rights of way, and terminals owned or used for the purposes of a common carrier, and ascertained as of the time of dedication to public use, and the present value of the same, and separately the original and present cost of condemnation and damages or of purchase in excess of such original cost or present value.

"Third. Such investigation and report shall show separately the property held for purposes other than those of a common carrier, and the original cost and present value of the same, together with an analysis of the methods of valuation employed. * * *"

The last-mentioned act also contained various provisions not pertinent to the present inquiry, and thereafter proceeded as follows:

"Every common carrier subject to the provisions of this act shall furnish to the Commission or its agents from time to time and as the Commission may require maps, profiles, contracts, reports of engineers, and any other documents, records, and papers, or copies of any or all of the same, in aid of such investigation and determination of the value of the property of said common carrier, and shall grant to all agents of the Commission free access to its right of way, its property, and its accounts, records, and memoranda whenever and wherever requested by any such duly authorized agent, and every common carrier is hereby directed and required to co-operate with and aid the Commission in the work of the valuation of its property in such further particulars and to such extent as the Commission may require and direct, and all rules and regulations made by the Commission for the purpose of administering the provisions of this section and section twenty of this act shall have the full force and effect of law. Unless otherwise ordered by the Commission, with the reasons therefor, the records and data of the Commission shall be open to the inspection and examination of the public.

"Upon the completion of the valuation herein provided for the Commission shall thereafter in like manner keep itself informed of all extensions and improvements or other changes in the condition and value of the property of all common carriers, and shall ascertain the value thereof, and shall from time to time, revise and correct its valuations, showing such revision and correction

classified and as a whole and separately in each of the several states and territories and the District of Columbia, which valuations, both original and corrected, shall be tentative valuations and shall be reported to Congress at the beginning of each regular session.

"To enable the Commission to make such changes and corrections in its valuations of each class of property, every common carrier subject to the provisions of this act shall make such reports and furnish such information as the Commission may require.

"Whenever the Commission shall have completed the tentative valuation of the property of any common carrier, as herein directed, and before such valuation shall become final, the Commission shall give notice by registered letter to the said carrier, the Attorney General of the United States, the Governor of any state in which the property so valued is located, and to such additional parties as the Commission may prescribe, stating the valuation placed upon the several classes of property of said carrier, and shall allow thirty days in which to file a protest of the same with the Commission. If no protest is filed within thirty days, said valuation shall become final as of the date thereof.

"If notice of protest is filed the Commission shall fix a time for hearing the same, and shall proceed as promptly as may be to hear and consider any matter relative and material thereto which may be presented in support of any such protest so filed as aforesaid. If after hearing any protest of such tentative valuation under the provisions of this act the Commission shall be of the opinion that its valuation should not become final, it shall make such changes as may be necessary, and shall issue an order making such corrected tentative valuation final as of the date thereof. All final valuations by the Commission and the classification thereof shall be published and shall be prima facie evidence of the value of the property in all proceedings under the act to regulate commerce as of the date of the fixing thereof, and in all judicial proceedings for the enforcement of the act approved February fourth, eighteen hundred and eighty-seven, commonly known as 'The act to regulate commerce,' and the various acts amendatory thereof, and in all judicial proceedings brought to enjoin, set aside, annul, or suspend, in whole or in part, any order of the Interstate Commerce Commission.

"If upon the trial of any action involving a final value fixed by the Commission, evidence shall be introduced regarding such value which is found by the court to be different from that offered upon the hearing before the Commission, or additional thereto and substantially affecting said value, the court, before proceeding to render judgment shall transmit a copy of such evidence to the Commission, and shall stay further proceedings in said action for such time as the court shall determine from the date of such transmission. Upon the receipt of such evidence the Commission shall consider the same and may fix a final value different from the one fixed in the first instance, and may alter, modify, amend or rescind any order which it has made involving said final value, and shall report its action thereon to said court within the time fixed by the court. If the Commission shall alter, modify, or amend its order, such altered, modified, or amended order shall take the place of the original order complained of and judgment shall be rendered thereon as though made by the Commission in the first instance. If the original order shall not be rescinded or changed by the Commission, judgment shall be rendered upon such original order."

June 7, 1922 (42 Stat. part 1, p. 624 [Comp. St. Ann. Supp. 1923, § 8591]), Congress passed an act entitled "An act to further amend an act entitled 'An act to regulate commerce,' approved February fourth, eighteen hundred and eighty-seven, as amended," which reads as follows:

"That the paragraph entitled 'First' of section 19a of the Interstate Commerce Act, as amended, is amended by inserting after the words 'In such investigation said Commission shall ascertain and report in detail as to each piece of property' the words and commas following: 'other than land,' so that said paragraph as amended shall read as follows:

" 'First. In such investigation said Commission shall ascertain and report in detail as to each piece of property, other than land, owned or used by said common carrier for its purposes as a common carrier, the original cost to date, the cost of reproduction new, the cost of reproduction less depreciation, and an analysis of the methods by which these several costs are obtained, and the reason for their differences, if any. The Commission shall in like manner ascertain and report separately other values, and elements of value, if any, of the property of such common carrier, and an analysis of the methods of valuation employed, and of the reasons for any differences between any

such° value and each of the foregoing cost values.'

"Sec. 2. That the paragraph entitled 'Second' of said section 19a is amended by striking out the comma after the words 'and the present value of the same,' and inserting a period in place thereof, and by striking out the words 'and separately the original and present cost of condemnation and damages or of purchase in excess of such original cost or present value' at the end of said paragraph, so that said paragraph as amended shall read as follows:

"'Second. Such investigation and report shall state in detail and separately from improvements the original cost of all lands, rights of way, and terminals owned or used for the purpose of a common carrier, and ascertained as of the time of dedication to public use, and the present value of the same.'"

The record shows that the property of the petitioning company was appraised by the Commission under the above-mentioned act of March 1, 1913, commonly known as the Valuation Act, in and by an order fixing the tentative value of the property as of June 30, 1914, at $49,495,770.84, and subsequently, to wit, March 31, 1921, made and announced a supplemental tentative valuation of the property at $45,871,093, and also reporting the costs of reacquiring the company's land as of date June 30, 1914. To both of such tentative valuations the petitioning company entered protests and in support of protests introduced evidence at hearings before the Commission, at which hearings opposing evidence was also introduced. The matter was submitted to the Commission by oral arguments and also on briefs, resulting in a report and order of the Commission, made and entered June 7, 1923 (from which there were a number of dissents by various of the commissioners), fixing the "final valuation of the property" of the company at $48,669,647 as of June 30, 1914—the present petitioner claiming that its property was at that date worth more than $70,000,000.

On the hearing before this court the respondents challenged both by demurrer and motion its jurisdiction, which objection was taken under advisement, and the petitioner permitted to introduce both oral and documentary evidence in addition to that introduced before the Commission, some of which new evidence tends to show that the value of the property in question at the date fixed in the Commission's final valuation was greatly in excess of that fixed by it in its final valuation.

[1] We think there is no merit in the contention of the respondents that this court is without any jurisdiction in the case. It is apparent from the provisions of the Valuation Act that the tentative valuation of the Commission is a mere preliminary matter, and it was very recently so adjudged both by the District Court for the Southern District of New York in the case of Delaware & Hudson Co. et al. v. United States, 295 F. 558, and by the Supreme Court in affirming that decision on appeal January 5, 1925. 45 S. Ct. 153, 69 L. Ed. ——. That case sustained the jurisdiction of the court to inquire into the action of the Commission, even in fixing a tentative valuation of the railroad's property. A fortiori, the courts have jurisdiction to inquire into the Commission's action, where, as in the present case, its final valuation is involved; and that is the distinct implication to be drawn from these concluding words of the opinion of the Supreme Court in the Delaware case: "Pending further action by it the tentative valuation will not become final and no proceedings thereon can be taken. Under the circumstances disclosed appellants must pursue the remedy provided by the statute and give the Commission opportunity to take final action before they can properly ask interposition by the courts."

Moreover, as will be seen from the provisions of the act of March 1, 1913, above set out, the statute itself expressly declares that if, after hearing any protest of a tentative valuation by the Commission, it shall conclude that such valuation should not become final, it shall make such changes therein as it thinks proper, and that the order fixing its final valuation shall be prima facie evidence of the value of the property in all proceedings under the act to regulate commerce as of the date of the fixing thereof, and in all judicial proceedings brought to enjoin, set aside, annul, or suspend, in whole or in part, any order of the Commission.

[2] That statute further in express terms declares that "if, upon the trial of any action involving a final value fixed by the Commission, evidence shall be introduced regarding such value which is found by the court to be different from that offered upon the hearing before the Commission, or additional thereto and substantially affecting said value, the court, before proceeding to render judgment, shall transmit a copy of such evidence to the Commission, and shall stay further proceedings in said action for such time as the court shall determine from the date of such transmission. Upon the receipt

of such evidence the Commission shall consider the same and may fix a final value different from the one fixed in the first instance, and may alter, modify, amend or rescind any order which it has made involving said final value, and shall report its action thereon to said court within the time fixed by the court. If the Commission shall alter, modify, or amend its order such altered, modified or amended order shall take the place of the original order complained of and judgment shall be rendered thereon as though made by the Commission in the first instance. If the original order shall not be rescinded or changed by the Commission, judgment shall be rendered upon such original order."

It does not seem to us possible for Congress to have made its intention regarding the final valuation of the Commission plainer than it has by the language just quoted. In accordance with it, we must certify to the Commission the additional evidence that has been introduced by the petitioner before this court, for the consideration of and action by the Interstate Commerce Commission, and we must await its action in the premises. Should it not rescind or change its order fixing the final valuation of the property within the time to be fixed by this court, we must in pursuance of the statute proceed to render judgment upon its original order, in view of all of the evidence that has been introduced before this court.

Accordingly it is ordered that the demurrer and motion to dismiss interposed by the respondents be and hereby are overruled, and it is further ordered that a copy of all of the evidence introduced on behalf of the parties in this court which was not submitted to the Interstate Commerce Commission be certified to it for its consideration and action within six months from the time of the receipt by the Commission of such additional evidence.